1
2
3
4
5
6       **UNITED STATES DISTRICT COURT**
7       **SOUTHERN DISTRICT OF CALIFORNIA**
8
9   HIT ENTERTAINMENT, INC., a                    CASE NO. 06cv605 BTM(AJB)
    Delaware corporation, et al.
10                                                **ORDER GRANTING IN PART AND**
                                 Plaintiffs,      **DENYING IN PART MOTION FOR**
11      v.                                        **SUMMARY JUDGMENT**
12  NATIONAL DISCOUNT COSTUME CO.,
13  INC., a California corporation, dba NDC
    CLUB, dba COSTUME ENTERPRISES,
14  INC., et al.,
15                               Defendants.
16
17          Plaintiffs HIT Entertainment, Inc. ("HIT"), Lyons Partnership, L.P. ("Lyons"), and

18  Gullane (Delaware) LLC ("Gullane"), and Thomas Licensing, LLC ("Thomas Licensing")

19  (collectively "Plaintiffs") have filed a motion for summary judgment on their federal and

20  California trademark claims and their copyright infringement claim.  For the reasons

21  discussed below, Plaintiffs' motion for summary judgment is **GRANTED IN PART** and

22  **DENIED IN PART**.

23                              **I.  BACKGROUND**

24          Lyons is the creator and owner of the famous "Barney" children's characters,

25  "Barney," "Baby Bop," and "BJ" (collectively the "Barney Characters").  Lyons owns

26  numerous federal trademark and service mark registrations and numerous federal copyrights

27  for these characters.  (Slocum Decl. ¶ 8, Exs. 7, 8.)

28          HIT Entertainment Limited, one of the HIT Entertainment group of companies, owns

                                          1

1   all U.S. trademarks related to the "Bob the Builder" character.  (Slocum Decl. ¶ 19.)  HIT

2   Entertainment Limited and Keith Chapman are joint owners of the copyright in the "Bob the

3   Builder" character.  (Id.)  HIT Entertainment Limited has licensed to HIT the sole and

4   exclusive right to exploit and distribute the "Bob the Builder" character and property in the

5   United States.  (Id.) HIT has obtained copyright registrations for the "Bob the Builder" series

6   episodes and for related videotapes, DVDs and books.  (Id. at ¶ 24, Ex. 7.)  HIT has also

7   obtained registrations of several federal trademarks and service marks related to the "Bob

8   the Builder" series and character.  (Id. at ¶ 25, Ex. 8.)

9        In 1987, Gullane obtained an exclusive license of all television and merchandising

10   rights related to the "The Railway Series" featuring "Thomas the Tank Engine."  (Slocum

11   Decl. ¶¶ 28-29.) In 2005, Gullane assigned these rights to Thomas Licensing. (Id.) In 1998,

12   Gullane obtained an exclusive license for all U.S. publishing rights to the Railway Series.

13   (Id. at ¶ 30.) Gullane and its predecessors and affiliates have secured copyright registrations

14   for the Thomas series episodes and for related videotapes, DVDs, and books.  (Id. at ¶ 34,

15   Ex. 10.)  Gullane and its predecessors and affiliates have also obtained registration of

16   federal trademarks and service marks related to the Thomas series and to the Thomas

17   character.  (Id. at ¶ 35, Ex. 11.)

18        Lyons, HIT, and Thomas Licensing take precautions to protect their characters'

19   images and do not license the manufacture, distribution, sale, or rental of any costumes for

20   adults depicting their characters.  (Slocum Decl. ¶¶ 40, 42, 43.)  Plaintiffs do not license

21   adult costumes for commercial use to ensure that young children will not be distressed or

22   upset by the conduct of unauthorized impersonators in knock-off costumes.  (Id. at ¶ 44.)

23   Authorized personal appearances by the Barney Characters and Bob the Builder are

24   carefully choreographed, and significant training is required for the performer wearing the

25   costume.  (Id. at ¶¶ 41-42, 45.)  Thomas is not ever represented by a costumed person, but,

26   rather, by an appropriately decorated train.  (Id. at ¶ 45.)

27        In 1996, Lyons commenced Case No. 96cv987 against National Discount Costume,

28   Inc. ("NDC"), AIQ, Inc., American Chinese Times, Inc., Happy Face Co., Inc., and NDC

owners Ai Quach and Huongle ("Le") Quach (collectively "NDC Defendants"), alleging that they were manufacturing, selling and/or offering for sale costumes imitating and infringing Lyons' registered copyrights and trademarks in the characters "Barney," "Baby Bop," and "BJ" (collectively "Barney Characters"). In August 1996, the parties entered into a settlement agreement and stipulated to a permanent injunction.

On October 11, 2005, Shawn Lewis, an investigator hired by Lyons, placed an order with an NDC employee named "Nikki" for adult-sized costumes of "Bob the Builder," "Thomas the Tank Engine," and "Clifford the Big Red Dog" (owned by Scholastic, Inc.) (Lewis Decl. (Ex. 31 to Weisz Decl.) ¶ 15.)  The order was filled and the costumes were shipped to Lewis's office.  (Id. at ¶ 16.)  Photographs of the allegedly infringing "Bob the Builder" and "Thomas the Tank Engine" costumes received by Lewis are attached as Exhibit 5 to Lewis's Declaration.

On October 25, 2005, Lewis placed an order with Nikki for adult-sized costumes of "Baby Bop," "BJ," and "Dorothy the Dinosaur" (owned by The Wiggles Pty Ltd.). (Lewis Decl. ¶ 17.)  Nikki told Lewis that she would have to confirm the availability of the "Baby Bop" costume with her boss "Lee." (Id.)  All three costumes were shipped to Lewis.  Photographs of the "Baby Bop" and "BJ" received by Lewis are attached as Exhibits 9 and 10 to Lewis's Declaration.

On November 8, 2005, Lewis placed an order with Nikki for an adult-sized "Barney" costume. (Lewis Decl., ¶ 19.)  A copy of the dinosaur costume that was delivered to Lewis is attached as Exhibit 13 to Lewis's Declaration.

On March 17, 2006, HIT, Gullane, and Thomas Licensing commenced this action against NDC (dba NDC Club, dba Costume Enterprises, Inc.), Ai Quach, and Huongle Quach.[1]  On March 27, 2006, the Court issued a temporary restraining order in both this case and Case No. 96cv987, enjoining Defendants from engaging in infringing activity and authorizing the U.S. Marshals to seize certain evidence. On April 26, 2006, the Court issued a Preliminary Injunction Order which provides:

---

[1]  Lyons was recently added as a Plaintiff in this action in an Amended Complaint.

Defendants, their officers, agents, and anyone acting in concert with them are preliminarily enjoined from infringing Plaintiffs' copyrights and trademarks. Defendants are prohibited from, among other things, advertising, importing, distributing, manufacturing, selling, or offering for sale costumes which depict characters that are the same as or substantially similar to Plaintiffs' protected characters.

(Preliminary Injunction Order ¶ 1.)

Among the items seized was a four-color advertising catalog of costumes which included costumes resembling Plaintiffs' protected characters as well as costumes resembling other well-known characters such as Mickey Mouse, Minnie Mouse, Winnie the Pooh, and Care Bears.  (Ex. 18 to Weisz Decl.)  There were hundreds of these catalogs ready for mailing next to large manila envelopes in the NDC office area.  (Weisz Decl. ¶ 34.) Next to these catalogs were stacks of corresponding price lists which used the trademark protected names of the characters in addition to the generic description of the characters – e.g., "Barney $475.00 – purple dino."   (Id. at ¶ 38, Ex. 20.)  Also seized were molds, heads, and bagged costumes of Plaintiffs' protected characters.  (Weisz Decl. Ex. 22.) Seized invoices show that orders for costumes resembling trademarked characters were usually documented as a "Special Order" or "Costume" order.  (Id. at ¶ 49.)  However, some invoices referenced the trademarked characters by name, codename and/or catalog number. (Weisz Decl. ¶ 48.)  Based on this small subset of invoices alone, there were 20 sales of allegedly infringing "Barney" costumes, 1 of "Baby Bop," 2 of "BJ," 14 of "Bob the Builder," and 3 of "Thomas the Tank Engine."  (Id.)  There was also evidence that pictures of the costumes resembling trademarked characters and the price list for such costumes were faxed to customers.  (Id. at ¶ 57.)

In mid-September, 2006, Roxanne D'Ambrosa, proprietor of AAA Party One Characters, a New Jersey corporation, received a message from "Nikkie[2] from Costumes . . . in California," who said that she was offering all character costumes on sale at 25% off the regular price.  (D'Ambrosa Decl. (Ex. 17 to Weisz Decl.) ¶ 4.)  D'Ambrosa called Costume Enterprises and was told that she could reach Nikkie at (619) 336-1866.  (Id. at ¶

---

[2]  Also spelled as "Nikki" in accordance with Plaintiffs' papers.

5.) D'Ambrosa called this number and reached Nikkie.  D'Ambrosa asked Nikkie if "Bob the Builder" costumes were available.  (Id. at ¶ 6.)  Nikkie said that they were.  D'Ambrosa responded that she would call her back if she decided to buy one.

D'Ambrosa contacted counsel for Plaintiffs and offered to call back Nikkie and purchase a "Bob the Builder" costume.  (D'Ambrosa Decl., ¶ 7.)  D'Ambrosa and Plaintiffs' counsel agreed that investigator Shawn Lewis would listen in on the telephone conversation via speakerphone.  (Id.)  D'Ambrosa called Nikkie back and said that she wanted to order a "Bob the Builder" costume.  (Id. at ¶ 8.)  Nikkie said that she would check to see whether the "Bob the Builder" costumes were in stock and would call back.  (Id.)  Nikkie took D'Ambrosa's credit card number for the purchase and told D'Ambrosa that even if the costumes weren't in stock, they "could make them in a day."  (Id.)

Shortly thereafter, Nikkie called D'Ambrosa back and told her that the "Bob the Builder heads were ready to ship" and that the body was being made "as we speak."  (D'Ambrosa Decl., ¶ 9.)  Nikkie assured D'Ambrosa that they would only need one day to manufacture the body.  (Id.)  Nikkie stated, "I have another client who needs the costume, and I'd like to ship both costumes at once."

The costume arrived at D'Ambrosa's business on September 27, 2006.  A picture of the costume is attached as Exhibit B to D'Ambrosa's Declaration.  The costume looks identical to the costumes that were previously sold by the NDC Defendants.

Upon discovering that Defendants were still engaging in infringing activities, Plaintiffs brought a motion for civil contempt and for sanctions.  The Court found that Huongle Quach and  Costume Enterprises, Inc. were in contempt of the Court's Preliminary Injunction Order and imposed sanctions in the amount of $29,689.75.

## II.  DISCUSSION

Plaintiffs move for summary judgment on their claims for trademark infringement in violation of sections 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114 and 1125), false designation of origin/false description in violation of section 43(a) of the Lanham Act (15

U.S.C. § 1117(a)), unfair competition in violation of section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), trademark infringement in violation of Cal. Bus. & Prof. Code § 14335, and copyright infringement (17 U.S.C. § 501 et seq.).  For the reasons discussed below, Plaintiffs' motion for summary judgment is granted in part and denied in part with respect to the trademark claims and is denied with respect to the copyright claim.

A. <u>Trademark Claims</u>

Plaintiffs have brought Lanham Act claims under sections 32, 43, and 43(a) of the Lanham Act in addition to a trademark infringement claim under Cal. Bus. & Prof. Code § 14335.

To prevail on a claim of trademark infringement or unfair competition under the Lanham Act, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks." <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175 (9th Cir. 1988) (quoting <u>New West Corp. v. NYM Co. of California</u>, 595 F.2d 1194, 1201 (9th Cir. 1979)).  The "likelihood of confusion" test also applies to trademark infringement claims under California law. <u>See</u> <u>M2 Software, Inc. v. Madacy Entertainment</u>, 421 F.3d 1073, 1080 (9th Cir. 2005).

In the Ninth Circuit, courts use an eight-factor test to analyze the likelihood of confusion.  <u>Dr. Seuss Ent., L.P. v Penguin Books USA, Inc.</u>, 109 F.3d 1394, 1404 (9th Cir. 1997).  The eight factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of good and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 342, 348-49 (9th Cir. 1979).  "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." <u>Surfvivor Media, Inc. v. Survivor Productions.</u>, 406 F.3d 625, 631 (9th Cir. 2005).

///

The Ninth Circuit has cautioned that "district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." Thane, 305 F.3d at 902. "[T]he question of likelihood of confusion is routinely submitted for jury determination as a question of fact." Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1265 (9th Cir. 2001).

With respect to Plaintiffs' trademarks in connection with the visual appearance of the protected characters, the evidence before the Court establishes that (1) Plaintiffs have strong marks in connection with their unique protected characters. (2) The costumes resembling the "Barney" Characters are substantially similar to the protected characters due to the use of similar color combinations, very similar head shape and facial features, and distinctive accessories such as BJ's sideways red baseball cap and Baby Bop's hair bow. There is a lesser degree of similarity between the costume resembling "Bob the Builder" and the protected character; although the costume and protected character have similar facial features, the costume does not include Bob's distinctive checkered shirt and light denim overalls (the construction hat, tool belt, and work boots are items that any construction worker would wear). Similarly, although the costume resembling "Thomas" and the protected character have some similarities such as color scheme and a round face, there are a number of differences, including facial features, shape of the body, and the costume's inclusion of what appear to be feet. (3) Defendants intended that their allegedly infringing costumes look similar to Plaintiffs' protected characters (as demonstrated by Defendants' use of the trademarked names in connection with selling the costumes). However, there is little evidence with respect to the remaining Sleekcraft factors.

Although Plaintiffs do not themselves license for sale adult-sized costumes of the protected characters, Plaintiffs contend that (1) Defendants' costumes are calculated to recreate the images of the Plaintiffs' protected characters as they appear live; (2) Defendants' costumes are designed for and frequently purchased and used by businesses who use the costumes for profit in unauthorized live performances and appearances of the

protected characters; and (3) such unauthorized performances and appearances are marketed via the same channels as Plaintiffs' authorized performances and appearances. (Mem. of P. & A. in Support of Mot. for Summ. J. at 11-12, Reply at 7.)  However, Plaintiffs have not presented evidence supporting their contentions.

In Lyons Partnership v. Morris Costumes, Inc., 243 F.3d 789 (4th Cir. 2001), evidence was presented at a bench trial regarding who rented the NDC costume resembling "Barney" and how the costumes were used – i.e., to entertain young children.  Here, no such evidence was introduced.  Furthermore, there is no evidence that the "Barney" costume that was the subject of the Fourth Circuit case is the same as the "Barney" costume at issue in this case.

Although Plaintiffs appear to have a strong claim of trademark infringement with respect to their trademarks relating to the images of the "Barney" characters, absent evidence regarding who buys the allegedly infringing costumes sold by Defendants, how the allegedly infringing costumes are used, what marketing channels (if any) are utilized, and actual confusion, the Court finds that there is a triable issue with respect to the likelihood of confusion.

However, the Court finds that Plaintiffs are entitled to summary judgment with respect to their *word marks.*  During conversations with Shawn Lewis, Nikki of Costume Enterprises represented that the costumes Lewis was purchasing were "Baby Bob," "BJ," "Barney," "Thomas the Tank Engine," and "Bob the Builder."  Nikki represented to Roxanne D'Ambrosa that she was purchasing a "Bob the Builder" costume.  Plaintiffs own the registered word marks "Barney," "Baby Bop," "BJ," "Bob the Builder," "Thomas and Friends," "Thomas Station," and "Day out with Thomas."  (Exs. 5 and 11 to Slocum Decl.)  Thus, with respect to the "Barney" Characters and "Bob the Builder," the *identical* marks were used by Costume Enterprises to sell costumes.  With respect to the "Thomas the Tank Engine" character, Costume Enterprises used the dominant element of Plaintiffs' word marks – i.e., the word "Thomas."  Costume Enterprises clearly intended to use the word marks (or portions thereof) and the use of such marks in connection with the sale of costumes would be likely to confuse a customer as to the source of the costumes, regardless of how similar (or dissimilar) the

costumes ultimately received by the customer were to the protected characters.[3]

Given the strength of the word marks, clear intent to use the word marks or portions thereof, the use of the identical words, and the circumstances in which the marks were used, the remaining Sleekcraft factors are of little importance. No reasonable jury could conclude that Costume Enterprises' purposeful use of Plaintiffs' word marks did not create a likelihood of confusion as to the source of the costumes. Therefore, Plaintiffs are entitled to summary judgment as to the liability of Costume Enterprises for the infringement of their word marks.

The Court does not grant summary judgment against Huong Le because there are triable issues of material fact with respect to her personal liability. "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Committee for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 823 (9th Cir. 1996) (quoting Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)). Unless a shareholder, whether sole or otherwise, is personally involved in the corporation's acts of trademark infringement, he or she is not jointly liable for the tort. Peaceable Planet, Inc. v. Ty, Inc., 362 F.3d 986, 994 (7th Cir. 2004). See also Microsoft Corp. v. Suncrest Ent., 2006 WL 1329881 (N.D. Cal. May 16, 2006) (holding that sole shareholder, owner, and officer of corporation was not personally liable for trademark infringement because the evidence did not establish that she personally participated in purchasing decisions.). There is a dispute of material fact with respect to whether Huong Le was personally involved in the corporation's acts of infringement.

Similarly, there is a triable issue of material fact with respect to whether Ai Quach and American Chinese Times actively participated in any of the acts of infringement. Therefore, the Court does not grant summary judgment against Ai Quach or American Chinese Times.[4]

---

[3]  The word marks were also used on price lists discovered during the seizure. However, it appears that there is no evidence that these price lists were actually mailed out to customers or potential customers. Therefore, this discussion is limited to the use of the word marks during transactions with Lewis and D'Ambrosa.

[4]  Ai Quach's evidentiary objections to the Weisz declaration are overruled as moot.

Plaintiffs seek statutory damages under 15 U.S.C. § 1117(a), which provides for damages not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.  Although the statute does not provide guidelines for courts to use in determining an appropriate statutory award, courts have found guidance in case law relating to an analogous provision for statutory damages in the Copyright Act, 17 U.S.C. § 504(c).  Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003).  Courts awarding statutory damages under the Copyright Act look to factors including: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  Id. (quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986)). The Court believes that these factors would be best evaluated when the full extent of Defendants' liability is known.  Therefore the Court declines to award damages at this time.

Plaintiffs are, however, entitled to injunctive relief under Cal. Bus. & Prof. Code § 14335.  Therefore, the Court permanently enjoins Costume Enterprises from using Plaintiffs' word marks in connection with the advertising or sale of their costumes.

B.  Copyright Infringement

To establish copyright infringement, the plaintiff must prove ownership of the work in question, access to the work by the defendant, and substantial similarity of both the general ideas and the expression of those ideas.  Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir. 1977).  Proof of substantial similarity is satisfied by a two-part test.  Under the extrinsic test, the focus is on whether the two works share a similarity of ideas and expression as measured by external, objective criteria. Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004).  This analysis often requires analytical dissection of a work and expert testimony.  Three Boys Music Corp. v. Bolton, 212 F.3d 477,

10

485 (9th Cir. 2000).  Once the extrinsic test is satisfied, the factfinder applies the intrinsic test.  Id.  The intrinsic test is subjective and asks whether the ordinary, reasonable person would find the "total concept and feel of the works" to be substantially similar.  Id.

The Court finds that Plaintiffs' protected characters and the allegedly infringing costumes share a similarity of ideas and expression as measured by external, objective criteria – i.e., color choice, facial features, shape of certain body parts, distinguishing accessories (Baby Bop's hair bow and BJ's sideways baseball cap), and the combination of these details.  However, the allegedly infringing costumes are not so similar to the protected characters that no triable issue exists with respect to whether the total concept and feel of the works are substantially similar.  Therefore, the issue of intrinsic similarity must be left for the jury, and Plaintiffs' motion for summary judgment on the copyright claim is denied.

### III. **CONCLUSION**

For the reasons discussed above, Plaintiffs' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' motion for summary judgment is **GRANTED** as to the liability of Costume Enterprises for infringing Plaintiffs' word marks "Barney," "Baby Bop," "BJ," "Bob the Builder," and "Thomas the Tank Engine." Plaintiffs' motion is otherwise **DENIED**.

Costume Enterprises, Inc. and its agents, servants, employees, and contractors and all persons or entities acting under their direction, authority or control, and all persons acting in concert with any of them, are hereby **PERMANENTLY ENJOINED** from (1) using the word marks "Barney," "Baby Bop," "BJ," and "Bob the Builder" in connection with the advertising or sale of costumes; and (2) from infringing the word marks "Thomas and Friends," "Thomas Station," and "Day Out with Thomas," by using the word "Thomas" in connection with the

///

///

///

advertising or sale of costumes to indicate or imply that Thomas Licensing/Gullane are the source of the products.

**IT IS SO ORDERED.**

DATED:  March 26, 2008

Honorable Barry Ted Moskowitz
United States District Judge